UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-142(3) (DSD/HB)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

SAIED JABERIAN,
  also known as "Andre Jaberian,"

        Defendant.

**PLEA AGREEMENT AND SENTENCING STIPULATIONS**

The United States of America and defendant SAIED JABERIAN (hereinafter referred to as the "defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota (hereinafter the "United States" or the "Government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

    1.    **Charges.** The defendant agrees to plead guilty to Count Nine of the Indictment, which charges the defendant with securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff, Title 17, Code of Federal Regulations, Section 240.10b-5, and Title 18, United States Code, Section 2. The defendant fully understands the nature and elements of the crimes with which he has been charged. At the time of sentencing, the government agrees to move to dismiss the remaining counts of the Indictment against the defendant.

1

2.  **Factual Basis.** The defendant is pleading guilty because he is in fact guilty of Count Nine of the Indictment. In pleading guilty, the defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

In February 2018, in the State and District of Minnesota, and elsewhere, defendant Saeid Jaberian, also known as "Andre Jaberian," did knowingly and willfully, directly and indirectly, by use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud; (b) making an untrue statement of material fact and omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, in violation of Title 15, United States Code, Sections 78j(b) and 78ff and Title 18, United States Code, Section 2.

More specifically, in February 2018, defendant Jaberian participated in pump-and-dump scheme involving Bell Buckle Holdings, Inc., a dormant public shell company that traded over-the-counter under the symbol BLLB. As part of the scheme, Jaberian and his co-conspirators bought stock in Bell Buckle Holdings at low prices in the OTC market. Jaberian was able to obtain millions of shares because the stock traded at only a fraction of a penny per share.

After buying stock in Bell Buckle Holdings, Jaberian's co-conspirators hijacked and took control of the company by creating and filing fake resignation letters and board minutes purporting to announce the resignation of the prior corporate officers and the appointment of Jaberian as the new President and CEO. Jaberian then submitted a request for access to the companies' accounts with the SEC's Electronic Data Gathering, Analysis, and Retrieval (EDGAR) system, which allowed them to make public filings on behalf of the company.

Jaberian then provided information used to draft a press release announcing him as the CEO of Bell Buckle Holdings. The press release, which was later edited and expanded on by Jaberian's co-conspirators, contained false statements about Jaberian's background and his intent to run Bell Buckle Holdings as an import/export business involved in bulk leather sales. Jaberian's co-conspirators used this press release to fraudulently inflate, or "pump up," the price of Bell Buckle Holdings stock.

While Jaberian was willfully blind of the full nature of the scheme, he benefited from and took advantage of it by selling his stock at the fraudulently inflated prices. Jaberian made a profit of approximately $67,034 from his stock sales, though he later lost a portion of those profits due to additional trading in Bell Buckle Holdings stock.

3. **Waiver of Pretrial Motions**. The defendant understands and agrees that the defendant has certain rights to file pre-trial motions in this case. As part of this plea agreement, and based upon the concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to file any pre-trial motions in this case.

4. **Waiver of Constitutional Trial Rights.** The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him. The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

5. **Additional Consequences.** The defendant understands that as a result of his conviction, he could experience additional consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office.

6. **Statutory Penalties.** The defendant understands that Count Nine of the Indictment (securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff, Title

17, Code of Federal Regulations, Section 240.10b-5, and Title 18, United States Code, Section 2) is a felony offense that carries the following statutory penalties:

  a. a maximum of 20 years in prison;

  b. a supervised release term of not more than 3 years;

    a maximum fine of $5 million;

  c. restitution as agreed to by the parties in this agreement; and

  d. a mandatory special assessment of $100.

7. **Guidelines Calculations**. The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq*. Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guidelines calculations. The parties stipulate to the following guidelines calculations:

  a. <u>Base Offense Level</u>. The parties agree that the base offense level is 7. U.S.S.G. § 2B1.1(a)(2).

  b. <u>Specific Offense Characteristics</u>. The parties agree that the offense level should be increased by 6 levels because the loss of $67,034 was more than $40,000 but less than $95,000. U.S.S.G. § 2B1.1(b)(1)(D). The parties agree that no other specific offense characteristics apply and that there is no relevant conduct as defined by U.S.S.G. §§ 1B1.3(a)(1)(A) and (B).

  c. <u>Chapter 3 Adjustments</u>. The parties agree that the offense level should be decreased 3 levels because the defendant was substantially less culpable than the average participant in the scheme. The parties agree that, other than acceptance of responsibility, no other specific offense characteristics apply.

    d.    <u>Acceptance of Responsibility</u>. The government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). Whether this reduction will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendation is conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report. Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an enhancement for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility, including moving to withdraw his guilty plea after it is entered.

    e.    <u>Criminal History Category</u>. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category I. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

    f.    <u>Guidelines Range</u>. If the adjusted offense level is 8, and the criminal history category is I, the Sentencing Guidelines range is 0 to 6 months of imprisonment.

    g.    <u>Fine Range</u>. If the adjusted offense level is 8, the Sentencing Guidelines fine range is $2,000 to $20,000. U.S.S.G. § 5E1.2(c)(3).

8.  **Revocation of Supervised Release.** The defendant understands that if he were to violate any condition of supervised release, the defendant could be sentenced to an additional term of imprisonment up to the length of the original supervised release term, subject to the statutory maximums set forth in 18 U.S.C. § 3583.

9.  **Discretion of the Court.** The foregoing stipulations are binding on the parties, but do not bind the Probation Office or the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court will make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines range. If the Court or the Probation Office determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

10. **Agreements as to Sentencing Recommendation.** The government agrees to recommend a sentence of probation and no confinement. The defendant is free to recommend whatever sentence he deems appropriate. The parties reserve the right to make a motion for departures from the applicable Guidelines range pursuant to 18 U.S.C. § 3553(a), to oppose any such motion made by the opposing party, and to argue for a sentence outside the applicable Guidelines range. If the

Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

11. **Special Assessment.** The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted, pursuant to Guideline § 5E1.3. The defendant agrees to pay the special assessment prior to sentencing.

12. **Restitution Agreement.** The parties agree that the Mandatory Victim Restitution Act does not apply because, as set forth in 18 U.S.C. § 3663A(c)(3)(b), determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process.

13. **Forfeiture.** The defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) in conjunction with 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the securities fraud scheme charged in Count One of the Indictment. The defendant also agrees to forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(8), any real or personal property used or intended to be used to commit, facilitate, or promote the commission of the securities fraud scheme charged in Count One of the Indictment, and any property constituting, derived from, or traceable to the gross proceeds the defendant obtained directly or indirectly as a result of that offense.

The defendant consents to entry of a money judgment forfeiture in the amount of $57,034 and agrees that the amount of proceeds he obtained, directly or indirectly, as a result of the securities fraud scheme equals or exceeds this amount. The United States reserves its right to forfeit substitute assets and additional directly forfeitable property.

The defendant waives all statutory and constitutional defenses to the forfeitures described herein and waives any right to contest or challenge in any manner (including direct appeal, habeas corpus, or any other means) such forfeitures on any grounds.

14. **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution fines, and forfeiture ordered by the Court. The defendant agrees to complete a financial statement, agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets, and expressly authorizes the United States to obtain a credit report on the defendant to evaluate his ability to satisfy financial obligations imposed by the Court. If requested by the United States, the

defendant agrees to submit to one or more asset interviews or depositions under oath.

15. **Venue Waiver**. Recognizing that the criminal conduct in this case occurred in the State and District of Minnesota, as well as in various other states and districts in the United States, the defendant waives all rights to challenge venue in the State and District of Minnesota.

16. **Immigration Consequences**. The defendant understands that pleading guilty may have consequences with respect to his immigration status, including removal or deportation. The defendant understands that no one, including his attorney, the Assistant United States Attorney or the District Court, can predict to a certainty the effect of his conviction on his immigration status. Regardless of any immigration consequences that may follow from his guilty plea, even automatic removal or deportation from the United States, the defendant still wishes to plead guilty as set forth in this agreement.

17. **Waivers of Appeal and Collateral Attack**. The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is not limited to, the defendant's waiver of the right to appeal guilt or innocence, sentence and restitution, and the constitutionality of the statutes to which the defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by defendant of the substantive reasonableness of any sentence of imprisonment. The defendant also waives the right to petition under 28

U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel. The government waives its right to appeal the sentence.

The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

18. **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552 and 552A.

19. **Complete Agreement.** The defendant acknowledges that he has read this plea agreement and has carefully reviewed each provision with his attorney. The defendant further acknowledges that he understands and voluntarily accepts every term and condition of this plea agreement. This plea agreement, along with any agreement signed by the parties before entry of the plea, is the entire agreement and understanding between the United States and the defendant.

ANDREW M. LUGER
United States Attorney

Date: 11-28-2022

BY: JOSEPH H. THOMPSON
Assistant United States Attorney

Date: 11/28/2022

SAIED JABERIAN
Defendant

Date: 11-28-22

WILLIAM J. MAUZY
WILLIAM R. DOOLING
Counsel for Defendant