UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

                Plaintiff,

                        Crim. No. 21-142(3) (DSD/ECW)

v.

SAIED JABERIAN,

                Defendant.

**DEFENDANT'S POSITION WITH
RESPECT TO SENTENCING**

## I.    INTRODUCTION

Saied Jaberian is a 61-year-old husband and father of two children. He is an Iranian immigrant, originally from the city of Hamden, who narrowly escaped the 1978 Iranian Revolution by moving to the United States to finish high school.

In 2009, Jaberian started Discovery Real Estate, a small real estate agency based out of Minnetonka, Minnesota. Several years later he started a related business, Pars Investments, which renovated foreclosed homes and turned them into new-construction homes.

This led him to work with Mark Miller, a builder who helped him improve houses. Mark Miller had an interest in the "Over the Counter" (OTC) stock market. Unlike conventional stocks, OTC stocks are traded directly between parties, with no stock exchange supervising the trade. These stocks are often "thinly traded," with participants

1

purchasing hundreds of thousands or even millions of shares at prices well below 1 cent per share.

Over many years, Miller gave Jaberian stock tips on the OTC market, and eventually enlisted Jaberian in a scheme to "hijack" one OTC company, Bell Buckle Holdings, inflate its stock price, and sell its stock at a significant profit. Jaberian did not know the full extent to Miller's plan and did not know that Miller routinely carried out a similar swindle using other companies on the OTC market. Nevertheless, Jaberian assisted Miller by filing certain documents vital to the "hijacking" attempt with the SEC's EDGAR filing system, and by helping Miller's associates draft a press release which they used to "pump" the value of Bell Buckle Holdings' stock. Jaberian knew elements of this press release were false.

Jaberian has taken full responsibility for his minor role in Miller's complicated scheme. He submits that a sentence of probation, with no community confinement, home detention, or intermittent confinement would be sufficient but not greater than necessary to effectuate the sentencing goals of 18 U.S.C. § 3553(a)(2). Jaberian's plea agreement, at paragraph 10, notes that the Government agrees to the same sentencing recommendation.

## II.   RELEVANT FACTS

The relevant facts pertinent of this offense are contained in Jaberian's plea agreement. These facts represent a carefully negotiated agreement by experienced attorneys who thoroughly reviewed all the evidence in discovery.

Jaberian assisted in a complex pump-and-dump scheme involving Bell Buckle Holdings, Inc. Bell Buckle Holdings was a dormant company that traded on the OTC stock

market with shares that sold for fractions of a penny. Jaberian and his associates, including codefendants Mark Miller and Chris Rajkaran, along with other uncharged participants in Miller's scheme, purchased millions of shares of Bell Buckle Holdings stock. (Plea Agreement, Pg. 2.)

Jaberian's co-conspirators then "hijacked" the company by creating and filing fake resignation letters and board minutes. These minutes announced that a previous corporate officer had resigned and given control of the company to Jaberian. Jaberian remained willfully blind about the precise nature of the scheme.

After taking over Bell Buckle holdings, Jaberian helped Miller and his associates draft a press release that would be used to fraudulently inflate the value of Bell Buckle Holdings stock. (Plea Agreement, Pg. 3.) The press release which Jaberian helped draft used greatly exaggerated details from Jaberian's own background, coupled with false statements about Jaberian's intent to run Bell Buckle Holdings as an import/export business involved in bulk leather sales. *Id.* Jaberian knew these statements were false, and artificially inflated the value of Bell Buckle Holdings stock, which he later sold for a profit of approximately $67,034, though he later lost a portion of those profits due to additional trading in Bell Buckle Holdings Stock. *Id.* Thus, while Jaberian did not know the full nature of the scheme, he benefitted from and took advantage of it.

Jaberian's plea agreement contains a specific stipulation at paragraph 7(b) that "there is no relevant conduct as defined by U.S.S.G. § 1B1.3(a)(1)(A) and (B)." Thus, these facts by stipulation of the parties comprise the only relevant conduct the court should consider at sentencing.

### III. RELEVANT LAW

The U.S. Sentencing Guidelines advise the court to impose a sentence "sufficient, but not greater than necessary" to effectuate the purposes of sentencing. 18 U.S.C. § 3553(a). These purposes are outlined in section § 3553(a)(2) of the guidelines, and state that a sentence should reflect the seriousness of the offense, afford adequate deterrence, protect the public from further crimes of the defendant, and provide rehabilitation or correctional treatment to the defendant.

In all cases, the Court must "make an individualized assessment based on the facts presented" in each case. *Gall v. United States*, 552 U.S. 38, 50, 128 S. Ct. 586, 597 (2007). "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113, 116 S. Ct. 2035, 2053 (1996).

Jaberian pled guilty to a single federal crime: securities fraud in violation of 15 U.S.C. §§ 78(b) and 78(ff). Per the plea agreement, this fraud resulted in losses of approximately $67,034. Jaberian has admitted responsibility for this offense. The Court should sentence Jaberian in the context of this single offense and the stipulation that no other relevant conduct applies.

In this light, it is clear that a sentence of probation would be sufficient to communicate the seriousness of Jaberian's conduct, deter similarly situated people, protect the public, and provide Jaberian with the support and services he needs to reform.

### A. Saied Jaberian's Personal History and Characteristics Weigh in Favor of a Sentence of Probation

Jaberian is a 61-year-old man with strong family connections. His PSR describes close relationships with two brothers and one sister, his wife, and his two daughters. PSR ¶ 56–60. Jaberian works as a driver for Door Dash and his wife and one daughter live with him and depend on this work as a source of income.

Jaberian's PSR correctly notes that this offense is the first felony offense Jaberian has been found guilty of. PSR ¶ 49–54. Indeed, aside from several minor traffic offenses, this is the first crime Jaberian has ever even been accused of.

All of these factors weigh strongly in favor of a purely probationary sentence with no confinement. "The propensity to engage in criminal activity declines with age, and is, on average, sharply lower for persons over 70—although persons 65 and older are 13 percent of the population, they account for only seven tenths of one percent of arrests." *United States v. Johnson*, 685 F.3d 660, 661 (7th Cir. 2012). Furthermore, Jaberian's dependents also weigh strongly in favor of a sentence with no confinement. *See* U.S.S.G. §5H1.6. App. Note 1(B)(i) (noting that the court may consider, *inter alia*, a "substantial, direct, and specific loss of essential caretaking, or essential financial support, to the defendant's family" in fashioning a sentence).

### B. The Characteristics of the Offense Saied Jaberian Pled Guilty to Also Weigh in Favor of a Sentence of Probation

Jaberian has accepted responsibility for this offense as noted by ¶7(d) of his plea agreement and ¶36 of his PSR. Jaberian's acceptance of responsibility statement does not minimize his conduct or deflect responsibility in any way, he fully admits that he

exaggerated certain aspects of the Bell Buckle Holdings press release and included in the same press release a lie about his intention to turn Bell Buckle Holdings into a leather import/export company. PSR ¶ 36. The 8th Circuit has long recognized that simply admitting the facts that make one guilty is sufficient to qualify for acceptance of responsibility. *See United States v. Sklavenitis,* 905 F.2d 1166, 1168 (8th Cir. 1990) ("Because the district court appears to have concluded erroneously that the Guidelines tie the district court's hands by prohibiting the reduction unless the defendant does something in addition to pleading guilty, we remand for resentencing…."). "Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction" is "significant evidence of acceptance of responsibility…." U.S.S.G. §3E1.1.

Jaberian's plea agreement notes that he played a very small role in Miller's scheme, and thus "the defendant was substantially less culpable than the average participant in the scheme." Plea Agreement, ¶ 7(c). The Pre-sentence report agrees as well that "Jaberian had a minor role in the criminal activity based on his limited involvement in the fraud scheme." PSR ¶ 12. The PSR confines his conduct to filing "one document on behalf of Bell Buckle, and [allowing] his Co-defendants to use his name as the purported CEO of Bell Buckle." *Id.*

Jaberian's acceptance of responsibility statement also calls attention to the minor role Jaberian played in Miller's scheme. In Jaberian's own words: "I carried out the instructions of my mentor, Mark Miller…I did not know exactly what his plan was with Bell Buckle Holdings, but I knew it was improper." PSR ¶ 36.

Jaberian's PSR erroneously calls the court's attention to other fraudulent conduct carried out by Mark Miller and his associates. PSR ¶ 10 –17, ¶ 20 –29. These schemes are similar to the hijacking of Bell Buckle Holdings, but some do not involve Jaberian in any way. *See, e.g.*, PSR ¶ 10 –17. Others involve trades Jaberian made involving other companies, where he has not admitted any culpable knowledge or conduct. *See* PSR ¶ 20-29.

"A PSR is not evidence and not a legally sufficient basis for findings on contested issues of material fact." *United States v. Webster*, 788 F.3d 891, 892 (8th Cir. 2015). The Court should not rely on these assertions in determining Jaberian's sentence. Jaberian's plea agreement contains a specific stipulation between Jaberian and the Government that no relevant conduct exists outside the factual basis of the plea agreement. *See* Plea Agreement ¶7(b). "In order to rely upon a dismissed charge for purposes of sentencing, the government must prove the defendant committed the alleged offense by a preponderance of the evidence." *United States v. Brave Bull*, 828 F.3d 735, 739 (8th Cir. 2016). Under the United States Sentencing Guidelines "[u]nreliable allegations shall not be considered." U.S.S.G. 6A1.3. "[S]ome minimal indication of reliability must accompany a hearsay statement, other than mere allegation, before it may be relied upon in sentencing." *United States v. Reid*, 911 F.2d 1456, 1464 (10th Cir. 1990).

Furthermore, it is becoming increasingly controversial for courts to sentence defendants based on unadmitted conduct or alleged offenses not proved to a jury beyond a reasonable doubt. *See* United States Sentencing Commission, Proposed 2023 Amendments to the Federal Sentencing Guidelines, February 2, 2023, pg. 211 (proposing a new

7

amendment to the Federal Sentencing Guidelines to prohibit the use of acquitted conduct in sentencing determinations).

For these reasons, the only relevant conduct the court should consider in this case is the hijacking of Bell Buckle Holdings, which is described in the factual basis of Jaberian's plea agreement.

### C.  The Court Should Impose a Sentence of Probation with No Confinement

The plea agreement in Jaberian's case has an agreed-upon sentencing recommendation between the Government and the Defense. That recommendation is a term of probation with no confinement. Plea Agreement at ¶ 10.

In Jaberian's case, a probationary sentence with the stigma that accompanies all felony convictions is sufficient but not greater than necessary to effectuate the sentencing goals articulated in 18 U.S.C. § 3553(a)(2). Probation involves inherent restrictions on liberty that comport with 18 U.S.C. § 3553(a)'s goal of imposing a punishment commensurate with the offense. "Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty." *Gall v. United States*, 552 U.S. 38, 48, 128 S. Ct. 586, 595, 169 L. Ed. 2d 445 (2007). "Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled." *United States v. Knights*, 534 U.S. 112, 119, 122 S. Ct. 587, 591 (2001) (Internal quotations removed).

Furthermore, Jaberian's felony conviction imposes significant costs and prohibitions that would provide adequate deterrence to any similarly-situated person. *See Morissette v. United States*, 342 U.S. 246, 260, 72 S. Ct. 240, 248 (1952) (noting that a felony label

alone is "as bad a word as you can give a man or thing."). Jaberian's PSR notes that "the defendant's offense is financial in nature, and his future employment may be impacted by this federal conviction." PSR ¶ 102.

## IV. CONCLUSION

For these reasons, the court should impose a sentence of probation with no community confinement, home detention, or intermittent confinement is appropriate. This is the same sentencing recommendation called for in Jaberian's Plea Agreement at ¶ 10.

Date: March 22, 2022

Respectfully submitted,

/s/ William J. Mauzy
William J. Mauzy (#68974)
William R. Dooling (#0402244)
650 Third Avenue South
Suite 260
Minneapolis, MN 55402
(612) 340-9108
wmauzy@mauzylawfirm.com
wdooling@mauzylawfirm.com
*Attorneys for Defendant*